The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Katherine E. Zienoff presiding. Good morning. This is 4-250260, People of the State of Illinois v. Danny L. Britt. Counsel, would you please identify yourselves for the record? First, counsel for appellant. My name is Connor Morley. I represent Danny Britt. Thank you. And counsel for appellee. This is Courtney O'Connor. I represent the state. Thank you. At this time, Mr. Morley, you may begin your argument. Thank you. May it please the court. As I said, my name is Connor Morley and I represent Danny Britt. Mr. Britt was convicted of unlawful possession of a weapon by a felon and endangering a child when his sister was pulled over with Britt and his daughter in the car and the police found a gun. However, the state failed to prove with any specificity where the gun was located in the vehicle. To prove that Mr. Britt constructively possessed the weapon, as this court knows, the state was required to prove that Britt had knowledge of the weapon and immediate and exclusive control over the area where the weapon was found. The facts of the case prior to the stop where the police found the gun are somewhat convoluted and hard to follow, but the itself is straightforward. Mr. Britt's sister is driving the car and she's pulled over, Britt's mother is in the front passenger seat, and Britt and his daughter are in the second row of seats. Britt's sister consents to a search of the vehicle and the police find a gun in Britt's daughter's backpack, which is located in the back half of the vehicle. That's the entirety of the state's case regarding where the gun was located. The state didn't prove what type of SUV this was or, you know, more crucially, the size of the SUV, how big the back half of the vehicle was. So, I have a question. So, your client was in the back seat next to his daughter, isn't that correct? Correct. And isn't it crucial, that is, isn't proximity to where the weapon was found sufficient, his proximity sufficient to show constructive possession? I think in some cases, proximity is sufficient to show constructive possession, but the problem here is we don't know how close the weapon was to Mr. Britt. We don't know the back half of the vehicle could have included sitting against the back door of the trunk, or it could have included at their feet. We don't know the proximity. We don't know whether he was five feet or 10 feet. And specifically, because they didn't prove the size of the SUV, if this was a suburban or a large SUV, I mean, there could have been a third set of seats and then the trunk, you know, we just have no idea. So, the state just didn't prove how close or far he was from the gun. It just merely proved that the gun was somewhere in the back half of the vehicle with him. Well, there was also testimony that from one of the witnesses that it was behind the driver's seat, wasn't there? There wasn't. So, the trial court was actually, misremembered the evidence. And this gets to the, I think the trial court's misremembering the evidence comes from kind of the convoluted nature of the facts before the stop. There were two SUVs that Britt, his daughter, and the backpack were in. This incident started with Britt driving his girlfriend's vehicle and to pick up his girlfriend at work. Her name is Mackenzie. So, Britt, his daughter, and the backpack were in Mackenzie's vehicle going to pick up Mackenzie from work. But Mr. Harley, let me interrupt you just for a moment. Yes, the trial court misremembered the testimony, but simply as to who he attributed the testimony to. He attributed a testimony to Burkett that was actually the testimony of Walker, but Walker testified at one point that the backpack was behind the driver's seat, didn't she? She did not. He, the trial court, misremembered both who said what he thought they said, and also what the evidence was. So, there was evidence of where Ms. Walker testified that the backpack could have been behind the driver's seat in Mackenzie's vehicle, in Britt's girlfriend's vehicle. She never testified to where the backpack was in her own vehicle. She, literally the only evidence that the state presented is that it was in the back half of the vehicle. With the first vehicle, there was some evidence about maybe it was in the trunk, or maybe it was behind the driver's seat. But with where the gun was actually found in Britt's sister's vehicle, Britt's sister never testified to where the gun was at, or where the backpack was at. The state also failed to prove who put the backpack in the SUV. That evidence came from two witnesses, from Britt himself and from Britt's sister. Britt said neither one of them could remember who put the backpack in the SUV. What did the defendant say about putting the backpack in the SUV? He said that it was, he couldn't remember who put it, who put the backpack in the SUV, but he said either him, his sister, or his mother put the backpack in the SUV. And then his sister similarly couldn't remember who exactly put it in, but it was either her or Mr. Britt. So there's no conclusive testimony. Sorry, go ahead. His sister testified that she didn't own a gun, right? Correct, and Britt also testified that he, that it wasn't his gun. I think another crucial point is that those two weren't the only two who could have put this gun in the backpack. There was also, this backpack was accessible to, this is prior, in the other SUV, Mackenzie's sister and her boyfriend were in the trunk and they were fiddling around with it. So there were other people who had access to this backpack who could have put the weapon in the backpack. And in fact, Jeremy, or the defendant claimed at trial that it was Jeremy, the sister's boyfriend that put the gun in the backpack, right? Correct. I think he just said, like, you know, I'm assuming, I don't know where the gun came from and he was messing with the backpack. So I'm assuming that he put it in and Britt also testified. What was the argument or what did defendant argue would have been the motive for Jeremy putting the gun in the backpack? I don't think Britt had a motive for him, but just the kind of common sense motive is sort of what the trial court stated when it was making its findings, which it just attributed to Britt, but I think is true of everyone in this case, um, that if the police are coming and you have a gun, you know, you got to get rid of your gun. So you put it somewhere. Um, and I, the reason Jeremy could have thought the police are coming is because Britt and his girlfriends have been outside. It's one o'clock in the morning and they've been outside fighting, um, for an extended period of time. And then that ends with Britt's girlfriend breaking her leg. So, I mean, there's all this commotion going on outside at one o'clock in the morning. I think anyone who was around that could think, you know, the police are, are going to show up at some point and he could have, you know, got, put the gun in the backpack. Um, of course all this is speculative, you know, we don't know what was going on, but, um, yeah, so as, as I was saying, or as I mentioned about the court misremembering the evidence, um, the, so the court said that the backpack was behind the driver's seat and there was no evidence that the backpack was behind the driver's seat. The court also misremembered the evidence and said that Britt put the backpack in the SUV. And there was simply no evidence to establish that Britt over his sister or his mother put the backpack in the SUV. Um, so we, we have both the state's failure to prove where the backpack was at. And then we also have the trial court bolstering the state's case and saying that the backpack was behind the driver's seat and that Britt put the backpack in the, in the car. Just none of those are true. Does it matter who put the backpack in the car? I mean, couldn't, couldn't defendant have slipped the weapon into the backpack while he was in the car, even if someone else had brought it in? Certainly, certainly anyone could have slipped the gun into the backpack while it was in the car. At least, I guess the, who put the gun or who put the backpack in the, in the car would at least give some sort of, um, you know, it would, it would suggest where the backpack was at, they knew where it was at or, you know, whether they had control over it. So I don't think. Well, I mean, that's his, it's his child's backpack. I don't, that's not a huge addition to the, to the pile of evidence. And also even if, uh, somebody else had put the gun in the backpack and defendant brought it in the car, but that by your rights would say that really doesn't matter because he wouldn't have known it was in there. So I guess who put it in the car just doesn't seem to me to add up to a significant fact one way or the other. That's fair, your honor. And I think that the, really the crux and what this comes down to is whether Britt had constructive possession of the gun while he was sitting in the backseat of the car and the state failed to prove where the back, where the gun in the backpack were, and that he had immediate and exclusive control over the backpack and that the Supreme Court's decision and people be wise establishes that you can't merely prove that the defendant is in the vehicle or is in the vehicle with a gun and therefore he constructively possessed the gun. You have to specifically prove that he had immediate and exclusive control over the, over the gun in the car. Well, he was, he was certainly seated the closest to it, was he not? I mean, we're talking about physical proximity again. I know that's where I started with questioning, but again, isn't that what constructive possession is about? That's correct. He would have been the closest adult, you know, given that the other two adults were in the front seats, he would have been the closest adult to it, but he had, he didn't just have to be close to it. He had, he didn't just have to be the closest to it. He had to be able to access the gun to have immediate and exclusive control over it and, and, you know, have control over the weapon. So even if he is the closest one that doesn't establish that he has control over that weapon. Well, unlike the Supreme Court case of Wise, where they found that the, it was five to 10 feet away, potentially this was within arm's reach of him. I disagree. I don't think that there was no evidence that it was within arm's reach of him. The state argues that at trial and in the briefing, and I assume they'll argue it here there was no evidence that it's within arm's reach of him. If this is an, if this is a suburban and it's in the back half of the vehicle, there is the majority of the back half of the vehicle is not within arm's reach of Britain. He doesn't have immediate or exclusive control over that area. But didn't, didn't defendant say that while he denied that the backpack was right next to him, he did say that it was back there as well, meaning with himself and his daughter. Well, I don't, he didn't, he, he denied that it was next to him. And I think that's as far as it goes. Obviously the, the backpack was there. I think he, you know, by back there, I don't, I didn't interpret that to mean, you know, in his general area, I think that he meant it the same as the officer. It was somewhere in the back half of the vehicle. So yeah, that he, he denied that it was next to him. So those are really the only, the fact that it was in the backpack of half of the vehicle and Brit's testimony that it wasn't next to him are the only two pieces of evidence that establish where this backpack was at, at all. And turning to child endangerment, the state failed to prove child endangerment for the same reason. Counselor, let's, let's try to give a little more context. Seated next to you in the vehicle was your daughter, five, five-year-old child. Yes, sir. Okay. And her backpack was back there as well. Is that correct? Wouldn't a finder of fact be able to conclude from that, that the backpack, the defendant and the child were all in that same area of the vehicle? Yeah, I think the, the issue is that it's so generic back there and back half of the vehicle just. Well, no, back half is different. This is defendant's words. Yeah. Next to you in the vehicle was your daughter and her backpack was back there as well. That sounds like the backpack would have been in that second row of seats, regardless of whether there was a third, regardless of whether there's a back area in the SUV, his words seemed to support the inference that the three of them were in that area. I suppose you could, you could interpret it that way. I don't interpret it that way. I interpret it as it was in the back part of the car somewhere. I mean, somebody else said back half, that's not his words. Well, yeah, back there. So I wouldn't interpret back there to mean in the, in the seat with the, with me, you know, back there as well. Correct. So that can, you couldn't, certainly you can interpret that if that's how you want to interpret it. Couldn't a reasonable finder of fact, interpret it that way and conclude that the evidence supports the conclusion that the backpack was in that same second area of seats with defendant and his daughter. Yeah, we don't have a reasonable fact finder doing that here. I mean, he completely misremembered it and didn't rely on that. If that is how this court interprets it, it can interpret it that way. That's not how I interpret it. I think back there means a lot. I don't think it means just the seat. You know, back there, he, he was asked multiple times where the backpack wasn't. He said he didn't know where it was. The only thing conclusively that he said is, is it wasn't next to him? And I don't think, you know, especially given that those aren't his words, he's, he's responding to a question about back there is my recollection of that testimony. So turning to the child endangerment, unless the court has any other questions about the possession, turning to child endangerment because the state failed to prove where the, where the gun was in the back half of the vehicle, it also failed to prove that EB was endangered by the weapon. To prove child endangerment, the state is required to prove that there was some sort of, there was a potential harm to EB or that she could have possibly harmed herself with this weapon so that she had, she could have gotten it and she could have harmed herself is what they were required to prove. The evidence here is that she was in, she was in her car seat asleep. The state didn't prove what part of the vehicle she could have accessed or what she could have grabbed or reached. I'm sure as this court's aware, car seats are extremely restrictive. I think it is a stretch to say even that EB could have reached over the car seat and touched the seat directly next to her, I think is a stretch. Well, it's been a while since my kids were in car seats. So hopefully my knowledge isn't too out of date, but my recollection is that there's a button kind of usually in the kind of crotch area and a five-year-old child doesn't seem like they would be locked in a car seat and unable to get out of it. Well, I think that that's the point of a car seat is to put them in there so that they can't get out of it. And I think if they can escape a car seat, it kind of defeats the point. Maybe for a two-year-old, but I think the point of a car seat is to restrain the child in the event of an accident, not to trap them in the back seat. Well, if the child doesn't want to be in the car seat and they just can't get out of the car seat anytime they want, then they wouldn't be restrained if they wanted to be out of the car seat when there was an accident. Mr. Morley, what evidence is there that she was even in a car seat or that there was a car seat in Walker's vehicle? Walker testified that she put the car seat in the vehicle and that she put EB in the car seat. Also, the second point, kind of setting aside the purpose of car seats, it was the state's burden to prove where EB could access. So, I mean, it's speculative to say that she could have gotten out of her car seat. We don't know anything about the development of EB or if she is developing as a typical five-year-old develops. We know none of that. We don't know that could move around in the back seat. The state also charged Mr. Britt for the child endangerment with the defendant left a loaded handgun directly next to the child in the back seat. So, it was never the state's position that EB could move freely throughout the back half of the vehicle and get this gun. The court and the state's attorney at trial solidifies this because the child court is struggling with what's required to prove child endangerment. So, the court's asking, is this enough? And so, he said, and this is, he's misremembering the evidence, but this is what he thinks the evidence says. And he's asking the state's attorney, is this enough to prove child endangerment? He says, I'm accepting mom's testimony. This backpack is on the floor behind the front seat on the floor. So, at the feet of the defendant and the child, is this enough? And the state's attorney says, well, I don't know how far it is to the floor of the SUV. So, the state's attorney is admitting he doesn't know whether the court can access or whether the EB can access this weapon on the floorboard of the vehicle. The court then goes on to say, well, yeah, I don't know if she's strapped into the vehicle or not. And that's a gap in the evidence. And the state's attorney says, yeah, it is a gap in the evidence. I agree. So, one, it wasn't the state's position that EB could move all about the back half of the vehicle and therefore she could have accessed this weapon. Two, even if it was, it was the state's burden to prove that she could have gotten out of that seat or she was out of the seat and that she could have moved all around. So, I'm going to interrupt. I'm sorry. We only have less than two minutes left and you have another argument based on a constitutional challenge to the statute. And I have a question with respect to that. Looking at your reply brief pages, I think it's 10 through 12, you seem to rely on decisions that hold that felons are among people presumptively protected by the Second Amendment. But really, isn't it true that each of the cases you relied on ultimately rejected the constitutional challenge under Bruin's second step? In other words, they found that modern statutes rejecting firearm possessions by felons do have historical analogs. So, why should we pay any attention to these decisions that you discussed in your reply brief? Yeah, I, we certainly understand, you know, the landscape of the decisions regarding Bruin and understand that, you know, nearly all, if not all of the appellate court decisions have gone against us. Specifically with regard to, you know, the state here only addressed whether Mr. Britt was part of the people. And I think that it would be incorrect to say that just because he's a felon, he's not a part of the people. That's not the way that we discuss any of the other rights. So, that was what the citation to those cases are. But we certainly understand, you know, that there are lots of cases that decide against us on that fact. But until the Illinois Supreme Court or the U.S. Supreme Court, you know, makes that decision, we, you know, have an obligation to continue raising this. And also, just one note is that the Benson, I believe, is the case that's pending right now in the Supreme Court about this. So, that could shed some light on this analysis as well. I think, Justice Harris, were you going to ask a question about Benson? I would. And if you would allow, in terms of the time here, Mr. Morley, would, if you're familiar enough with Benson to be able to speak to it, are any of the issues involved there potentially dispositive following the Supreme Court's decision in that case of the constitutionality issue in this case? Yeah, they certainly. So, I believe the Benson case is an as-applied challenge, and this is a facial challenge. So, there are small differences, but I think it will be very enlightening about the issue that is before you, before this court. Okay, thank you. Thank you. All right, Ms. O'Connor. Thank you. May it please the court, counsel, here in viewing the evidence in light of the state, a rational truer fact could and did find that defendant exercised constructive possession of the firearm in his child's backpack. As counsel pointed out, the state's duty was to prove that defendant knew the firearm was present and that he exercised immediate and exclusive control over the area where the firearm was found. Ms. O'Connor, I'm going to interrupt you, and I'm sorry, bookmark where you're at, but I just want to get in a question here real quickly. Was there witness testimony establishing that the backpack was behind the front seat of Walker's vehicle? There was not specific testimony that it was specifically behind the front seat, but there was testimony that, as the court pointed out, that defendant agreed that the backpack was back there with this child seated next to him as well. But the testimony you are referring to actually did refer to the girlfriend's vehicle that the backpack was located behind the driver's seat, I believe, on the floor. Yeah, so that was misinterpreted by the court. The state would agree to that. Okay, thank you. And going off that point, there was no direct testimony regarding who placed the backpack in the vehicle. However, knowledge can be proven by circumstantial evidence, which is what occurred in this case. The evidence presented by the state here... Excuse me, I'm sorry to interrupt, but weren't there multiple people who had access to this backpack? And we talked earlier in some questions and back and forth about Jeremy, and Jeremy was present when the defendant was fighting with his girlfriend. So why, you know, why wouldn't he have put it in there? And who put it in there? There was testimony regarding this, and ultimately does not specifically matter. The state would argue it does not specifically matter who put the gun there, because at the time that the firearm was found in the child's backpack, it was defendant as the sole adult, as well as the child's father, who was seated next to her in the rear of the vehicle, and the only adult back there with her. So at that point, the state would argue that he had the immediate control over this backpack, and it being his child's backpack, and the only adult in the vehicle back there was responsible for this backpack, as it being his child's backpack. And his proximity to the backpack helps prove that he had knowledge of the firearm in the backpack. So they would argue it does not specifically matter who placed the firearm, either in the backpack or in the vehicle. Does that answer your question, your honor? Thank you. Doesn't it matter who put it in the backpack, because that would go to whether the defendant knew it was in the backpack? Yes, however, the state also argues that it being his daughter's backpack, it's reasonable to infer that he knew what the contents were in the backpack. I mean, not if somebody else put it in there moments before. That would not be reasonable, would it? I believe, your honor, if he grabbed the backpack at any point, or looked at the backpack, I don't think it's unreasonable to infer that he knew what a firearm could look like, the outline of it, how heavy it is. There's no evidence of those things. There's no evidence that there was an outline. There's no evidence that the backpack was heavier than normal. If someone else had put the gun in the backpack, I don't think there would be a way to assume defendant's knowledge of that, or conclude it based on this record. Yes, your honor, I understand. Any more questions regarding that? No, I think we do need to believe that he put it in the backpack himself. Yes, your honor, and going off of that, as the court has discussed, it was defendant located in the back passenger seat of the vehicle, and his daughter to the back driver's seat of the vehicle, and the firearm in the backpack was contained in the rear of that vehicle, located near both defendant and his daughter, the only two people back there, and the only adult back there was defendant. If it had been in the back hatch of the SUV, especially if there were three rows, but even if there were two, would that make this case more likewise? I don't think so, your honor, not in this case, because I do believe that from this case, as well as common sense, that it is arms reach, and as you no matter where it is, it's the backpack wasn't arms reach in this case. Going off of common knowledge here, that you've been in an SUV, right? Yes, your honor. Stuff in the back is not necessarily within arms reach. Could you reach back and touch the back window? I mean, you probably couldn't. Yes, your honor. However, in this case, so they are in, like you said, in a vehicle, when you're in a vehicle, things, I know that was just to present this, but things move, and this goes to the potential harm of endangerment of the child. The state had to prove that she could be potentially harmed due to the defendant putting her in a situation of potential peril. Let's talk about constructive possession first, because I think you'd agree that without that, we don't have the endangerment. Correct, your honor. If it's behind the seats, in the back, isn't this case more like wise? If it's all the way in the back, yes, where they can't reach it, correct. Sorry, I thought you're referring to the third row, not the trunk. I would agree that if it's in the trunk, yes, absolutely. I'm just going off my personal knowledge with SUV, because I own one, sorry. But if you're talking about the trunk, then yes, I would agree it has to do with wise, where it's that five to ten feet out of reach, but the third row, not necessarily, arguably. Does that answer your question, your honor? Yeah, it does, although even that would depend kind of on the layout, whether it's a bench across the back versus a pass-through, and we don't really know any of that. That's correct, your honor. Is there any more questions regarding that? No. Okay, so the state would just argue that, and going to, the court did ask if it matters who exactly moved the backpack, the state would argue that as defendant being the only adult in the back, his child's father could be reasonably inferred that he was aware of the contents of his child's backpack and the location of the backpack. It also argued that defendant and his daughter were the only two in the area of the firearm where it was found, and that he was responsible for his daughter's backpack and the contents. When you say the area where it was found? Like so the defendant and his daughter are the only two individuals in the area in the back where the backpack was found on the firearm. The other two individuals were up front. Officer said back half, that's where it was found, the back half. So you're right, no one else was in the back half. Correct. The state would argue that he exercised immediate exclusive area over, control over this area, and therefore he, with his proximity to the backpack, had knowledge the firearm was present in the backpack and that he exercised control over the area, proving constructive possession of the firearm. And going to the actual endangerment of the child, the state would argue that defendant knowingly endangered his daughter the moment he allowed his child in the backseat of the vehicle where the firearm was located in her backpack, which was also in the rear of the vehicle. Well, if she was strapped in to the car seat, how would she have been able to have access to the bottom, to unzip, although we don't know if it's unzipped or not, but even that we do know that it was at the very bottom under some clothing. How would she have had access to it? Well, the state would first argue that there's actually no testimony she was ever buckled into her car seat. There's testimony that she was placed in her car seat, but the state would argue that the sister's testimony was not that she actually buckled the child into the car seat. It you for a moment on that, Ms. O'Connor. Was there actually any testimony that she was placed in the car seat? Or was that part of the question that was asked that assumed that she had been placed in the car seat? I believe from my recollection, the sister did testify that she did place the in the car seat, I believe. I'm sorry if I recalled that wrong, but I believe her testimony was that she recalled picking up the child and her tablet from the girlfriend's vehicle and then carrying the child and tablet to the vehicle and placing her in the car seat. But I don't think there's testimony regarding being strapped into the car seat. Okay, and it's that part being strapped in. I think there was a questioning of Walker by defense counsel, and part of the question assumed that she was strapped in. The question was, okay, so you get her strapped into your car. What side of your car was she on? And then Walker answers the left side, driver's side. But aside from that, is there any indication through testimony that she was actually strapped into a car seat? I don't believe so, Your Honor. Not that I can recall. Okay, thank you. And even going off that, even if she was, so you say, so we're going off the evidence, this testimony that says that she allegedly was strapped in, she may not have been strapped in. It's easy for a five-year-old to get up and down in their car seat and move along the vehicle. And even if she was strapped in, the state argues it's easy for a five-year-old to unbuckle a car seat. Unfortunately, that's just how it is with kids sometimes, and I think the state would argue that it's reasonable to infer that the child could have easily unbuckled herself and gotten to that backpack. Ultimately, the state would argue that the defendant did create a situation here where there was a possibility or potential, which is the key here, that the child could have been harmed had she gotten out of her seat and accessed that backpack. Even if that likelihood is small, it's still sufficient for the court to have found that defendant's conduct brought the child into, and this is coming from the People v. Collins, 214, Illinois, 2nd 206 case, that entered danger of peril, problem, harm, or loss at the very least created a dangerous situation involving the child. So ultimately, the state would argue that considering the totality of the circumstances here and taking the evidence and all reasonable inferences in light most available to the state, the rational true fact here, the court could have found that defendant knowingly caused his daughter to be placed in a dangerous situation that endangered her life or health when he exercised immediate and exclusive control over the area to which the firearm was located and his daughter's backpack that he was responsible for as her father and the sole adult in the backseat with her. So going to that argument, the state would ask that this court find the state met its burden and affirm defense convictions for child endangerment and unlawful possession of a weapon by a felon. And going to, just briefly to the constitutional argument here, the court would not mind me moving on to that argument. The state here would just ask that it follow its precedence here that, sorry, excuse me, that the Second Amendment does not protect felons categorically because of their status as a felon. And this has been found by this court specifically in the cases of Mallory and Burns, both found that probation of firearm possession by felons is proper in that status of defendant as a felon does not afford him the protections of the Second Amendment and therefore the constitutional challenges fail at the first step. So going off the constitutional challenge argument, the state would ask that this court continue its findings and follow its precedent here and affirm all defendants convictions and sentences. Thank you. To your knowledge, do you believe that the Supreme Court's decision in Benson could affect this case? I don't think it would affect this case specifically because I believe, if I recall, the Benson case also involves the argument of it being a non-violent prior conviction. And here I'd argue that robbery, as is the case here, could be considered a violent conviction. So it wouldn't matter if it's non-violent violence. I don't really think that if they found that felons with non-violent prior convictions could be afforded protections because of the prior conviction being non-violent. I don't think it would affect the case here. But it could. I mean, this is a big scope of cases that will enlighten us, I believe, no matter what when it comes to this issue. Thank you. Thank you. Mr. Morley? Yeah, just a couple of points. So just one on the constructive possession point, just the notion that Britt was responsible for everything in his daughter's backpack. You know, I think that there certainly are scenarios where a parent would be responsible for everything in their daughter's backpack. This is not one of them, given how many people had access to the backpack and could have put anything in the backpack. You know, it's not as if every time he picked up the backpack, he was looking through it to see what's in this backpack, what's in this backpack. So just the notion that because it's his daughter's backpack, he knows and is responsible for everything in the backpack, I think is unpersuasive. And then just turning to the child endangerment part, even setting aside whether EB could have gotten herself out of the car seat, it was the state's burden to prove where she could access, what part of the vehicle EB had access to, and where the gun was at in the vehicle that she could have accessed it. And there simply was no evidence about that. Are we looking at it, counsel, too narrowly as though the danger had to be right there in that car? I mean, if he had been arrested and the vehicle not searched, this child would have gone home with a backpack with a gun in it. Correct. Does the endangerment have to materialize kind of right at the moment? Correct. And it's certainly, we are not taking the position, and it's certainly bad that there was a gun in a child's backpack, and that is not, you know, no one wants that, and it's not a good thing. But what is required to prove child endangerment is that there was harm, yes, at that moment. It could be hypothetical. You know, you could say, oh, she doesn't have to actually get the gun, is what I'm saying, but she had- in a child's room when the child's not there. There's no immediate danger. But I think we'd all say that is putting a child at risk if you're hiding a loaded gun in their room because they're going to come back. So are we being too temporally narrow in thinking about the consequences of him hiding a gun in the child's backpack? It's about she's got to reach it at that moment. I don't think so. I think that there are all sorts of problems when you start getting into hypotheticals about what could happen in the future. You know, putting a gun in your bedroom, if you have a child, you know, the child could potentially get it. So there's endless hypotheticals about what could happen or endless, like, you know, future predictions about what could happen and how this could have gone. I understand. I think putting a gun in a child's backpack or a child's playhouse just seems so clearly an act of endangerment of the child that I don't know why we're focusing on, oh, the endangerment would have to theoretically manifest in the car. Well, first of all, that's how the state charged it. The state charged it as putting him, it says, on the seat next to her. So the state certainly didn't prove that. And secondly, I, yeah, I, the point is about access. And I, if, you know, if she goes home and goes to sleep and is with her aunt and mother, you know, then she's not going to be accessing this weapon and, you know, they would have discovered it. So there, again, there's just so many hypotheticals and ways that you could think about what could happen down the line and all of those things that it does. I think it becomes very problematic when you start thinking about, you know, well, in four hours, in six hours, what could have happened? And, you know, so I do think it has to be constrained to the time where it's charged and where the defendant is caught with what's happening. And then I just want to end with, again, the trial courts, one, misremembered the facts and thought that the backpack was behind the driver's seat. Two, admittedly said, I don't know what is required to prove child endangerment. Ask all of the parties, how do we prove this? He asked multiple questions. Does it have to be immediately accessible? Does it, you know, I was asking all of these things and was never told. I think the correct response to that would have been EB has to be able to access the gun and harm herself with the gun. But that was never told to the trial court. So even knowing, even with both of those things, giving the state evidence that it didn't actually prove and not knowing exactly the law, the state still decided that evidence is on the thin end of the stick when it found Mr. Brick guilty. So with that, we would ask that this court reverse his convictions for unlawful possession of a weapon by a felon and endangerment of a child. Thank you. Thank you very much. Thank you, counsel, both of you for your arguments this morning. The court will take them under advisement and render a decision in due course. The court is adjourned for the day. Thank you.